IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  12-cr-00010-MSK

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.  GEORGE H. ASKEW,
2.  ROMELL E. BULLOCK,
3.  **GREGORY A. COLLINS,**
4.  **GEORGE A. GADDY,**
5.  **DELBERT J. GARDNER,**
6.  RICHARD W. JOHNSON,
7.  SHEPS H. KHAMSAHU,
8.  **ERIC LUGO,**
9.  LAWRENCE T. MARTIN,
10. JOHNIE A. MYERS,
11. DARRELL R. PARKER,
12. CALVIN R. RILEY,
13. **COREY L. RILEY,**
14. **THOMAS A. SCHRAH, JR.,**
15. JAMES R. SWITZER, and
16. **CLIFFORD M. WRIGHT,**

        Defendants.

**GOVERNMENT'S RESPONSE TO DEFENSE MOTIONS
FILED BY DEFENDANTS COLLINS, LUGO AND SCHRAH
(#251, #252, #282, #285, #286, #302 AND #303)**

The United States of America, by United States Attorney John F. Walsh, through the undersigned Assistant United States Attorney (Government), respectfully submits this response to defense motions described below in accordance with Courtroom Minutes dated March 15, 2012 (#317, p.2).  The Government respectfully states and represents to

1

the Court as follows:

1. In general, the underlying investigation began in June 2007 after a drug courier was caught in Nebraska traveling east with a kilogram of cocaine. The courier had obtained the kilogram of cocaine in Denver from Corey Riley. Corey Riley was then president of the Colorado chapter Hell's Lovers Motorcycle Club (HLMC). The HLMC is a self described "Zero percent" outlaw motorcycle gang. The HLMC has chapters in a number of states. The HLMC functions as a secretive oligarchy, managed by a national board of directors, also known as the "Corrupt Crew." The board of directors appoints officers in the HLMC. Investigation discloses that, as "outlaws," HLMC members chronically tend to engage in conduct which violates State and federal laws. Some of the unlawful conduct takes place in the presence of other HLMC members and reflects collective behavior – some of the unlawful conduct represents the initiative of an individual or a clique acting more or less independently. By 2009, federal investigators were concerned that HLMC members or associates were involved in weapons violations and crimes of violence in addition to illegal drug related crimes. Investigators proceeded by the use of confidential human sources of information and an undercover agent. A delayed notice Rule 41 search warrant was executed in July of 2011, resulting in the recovery of a number of weapons, more than 8 pounds of marijuana, and more than 300 grams of cocaine. Sealed indictments and arrest warrants were obtained. The investigation eventually resulted in the execution of six federal search warrants on or about January 20, 2012. More than 100 marijuana plants, records, and a number of firearms were recovered. The investigation continues to develop.

2. The Government contends the doctrine of complicity in Title 18 U.S.C. § 2 and principles of shared responsibility for reasonably foreseeable acts apply in this case under *Pinkerton v. United States*, 328 U.S. 640 (1946). *See* 10th Circuit Pattern Instructions (2010) §2.21 (person in a conspiracy is responsible for reasonably foreseeable substantive acts of co-conspirators). *See also United States v. Edwards*, 36 F.3d 639, 644 (7th Cir. 1994). *Cf. United States v. Bindley*, 1157 F.3d 1235, 1238(10th Cir. 1998).

3. This case is set for trial on July 30, 2012. This case is set for a non-evidentiary hearing on May 11, 2012. The Court has authority to regulate pretrial discovery in a criminal case. Fed.R.Crim.P. 16(d). The Court's orders pertaining to the regulation of discovery are reviewed on appeal according to an abuse of discretion standard. *United States v. Gonzales*, 164 F.3d 1285, 1291 (10th Cir. 1999).

4. **Motion #251 and Motion #302**. Defendant Lugo's Motion to Compel Disclosure of Existence and Substance of Promises of Immunity, Leniency or Preferential Treatment (Motion #251) is substantially similar to Defendant Thomas A. Schrah, Jr.'s, Motion to Compel Discovery of Existence and Substance of Promises or Immunity, Leniency or Preferential Treatment (Motion #302).

5. Motion #251 and Motion #302 are, in major part, overly broad and unduly burdensome. Motion #251 at ¶2.a asks for:

> The full nature and extent of all immunity granted to the informant or cooperating witness including. But (*sic*) not limited to, the nature and details of all crimes for which the immunity was granted.

Motion #302 at ¶2.a is substantially identical. The artful choice of words is problematic in at least two respects. First, use of a phrase such as "but not limited to" creates a set with

3

an essentially unbounded list of members. Second, under the circumstances of this case, the universe of criminal activities for which any member of HLMC could be prosecuted is necessarily undetermined. Just as an example, on the average Thursday, Friday or Saturday night the after-hours HLMC clubhouse party would involve the unlicensed sale of alcohol, the avoidance of sales tax laws, the use of marijuana, the use of cocaine, the maintenance of drug involved premises, the possession of weapons by prohibited persons such as users of controlled substances and convicted felons, the possession of firearms in relation to drug involved premises, misprision of felony and other state or federal crimes. There would be crimes within crimes; for example, HLMC member Bullock, a convicted felon prohibited from having a firearm, transferred a firearm to HLMC prospect Switzer, a person under sentence for a felony and therefor prohibited from receiving a firearm. For the party on October 8, 2011, from the Sam's Club receipt recovered in the search warrants of January 20, 2012, it appears food was purchased through the fraudulent use of food stamps. Under the principles of *Pinkerton*, each member of the HLMC chapter whose patronage and monthly HLMC dues paid the rent, paid for the utilities, and otherwise sustained the HLMC clubhouse activities is legally responsible for the reasonably foreseeable criminal conduct of their HLMC associates in relation to the clubhouse. It is not possible, under the circumstances, to enumerate the list of crimes for which charges are not brought as to any member of the HLMC who attended the clubhouse activities, which the investigation discloses to include virtually every member of HLMC and many associates.

6. Motion #251 and Motion #302 clearly are overly broad to the extent the motions request information about persons who will not be called as witnesses. The motions would seem to be aimed at impeachment of witnesses who will testify at trial, but the text in the motions artfully slips away from that purpose. The motions demand information pertaining to "any informant" or "co-conspirator" (Motion #251 p.2)(Motion #302 p.2), witness or not. The motions demand information about payments or cooperation with "any agency of the United States or any other political entity" (Motion #302 ¶2.b) (Motion #251 ¶2.b). One co-defendant receives payments every month from the Veterans Administration for disability. The Veteran's Administration would appear to be within the class of "any agency of the United States . . ." A person's relationship with the Veterans Administration, the USPS, FEMA or any number of other government agencies is not pertinent, but counsel have drafted their motions so broadly the motions encompass "any" relationship with a government agency. The motions as drafted are overly broad; the Government respectfully submits it is not the role of the Court to rewrite or strain to construe the text of motions submitted by learned counsel. The effect of the defendants' overly broad demands is to impose an impossible burden on the Government. Even if construed to limit the requests to law enforcement agencies, the effect would be to go far beyond the purpose of impeachment of witnesses. The effect would be to provide the defendants with the identity of every person who has helped the police or the federal investigators, regardless of their status as a witness. Mr. Lugo would have a complete list of persons he should no longer sell cocaine to. Mr. Schrah would know who told the police about the chronic possession of weapons by prohibited persons at the HLMC clubhouse. It is not the purpose of *Giglio v. United States*, 405 U.S. 150 (1972), to provide Mr. Schrah and Mr.

Lugo with a list of associates who can be trusted to refrain from helping the police.

7. Further, the motions (Motion #251 ¶3) (Motion #302 ¶3), with no citation of authority and a complete failure to set forth specific operative facts, invite the Court to enter a *Henthorn* type of order. *United States v. Henthorn,* 931 F.2d 29, 31 (9th Cir.1991). *But see United States v. Lujan,* 530 F. Supp. 2d 1224, 1247-49 (D.N.M., 2008)*; United States v. Quinn,* 123 F.3d 1415, 1422 (11th Cir.1997)(declined to follow the Ninth Circuit's lead and required a showing of materiality before ordering disclosure of government files); *United States v. Driscoll,* 970 F.2d 1472, 1482 (6th Cir.1992) (upholding government's refusal to disclose testifying officers' personnel files based only on defendant's speculation that files contained impeachment material), *abrogated on other grounds by Hampton v. United States,* 191 F.3d 695 (6th Cir.1999); *United States v. Andrus,* 775 F.2d 825, 843 (7th Cir.1985) (noting that mere speculation is insufficient to require *in camera* inspection of personnel files of law enforcement witnesses); *United States v. Preston,* 1996 WL 254379, *15 (D.Kan. Apr.5, 1996) (unpublished opinion) (denying defendants' requests for order requiring government to review agent's personnel records because there was no factual basis for request). *See also United States v. Santiago,* 46 F.3d 885, 895 (9th Cir.1995) (holding that defendant must demonstrate materiality of prison inmate files before government has a duty to produce files). The defendants' attempt to obtain a *Henthorn* order without a sufficient factual showing should be denied.

8. The Government understands the requirements of *Giglio v. United States*, 405 U.S. 150 (1972). The Government will provide the defense with the information required by *Giglio*. The motions go far afield from *Giglio*. The motions as drafted include provisions so broad as to impose unreasonable, if not impossible, burdens on the Government. The

motions should be denied.

9. **Motion #252 and Motion #303**. Defendant Lugo's Motion to Disclose Identity of Informants (With Authority) (Motion #252) and Defendant Thomas A. Schrah Jr.'s Motion to Disclose Identity of Informants (With Authority) (Motion #303) are substantially identical.

10. The motions employ artful hedge phrases which inflate the lists of matters demanded essentially without limitation. It is difficult for the Government to imagine a more sweeping and unsupported demand for the specification of any person who has helped or is helping law enforcement. The motions are lacking as to the required showing under *Roviaro v. United States*, 353 U.S. 53 (1957). The motions fail to specify a single person by description or reference to any particular incident or count in the indictment. Mr. Lugo, for example, is aware of the names of his cocaine customers. He has been provided the audio files of the transactions in which he is charged. Apparently Mr. Lugo would like to know the names of other persons he would need to avoid if he were to resume his activities. Mr. Schrah understands from reports of investigation which have been provided under the discovery protective order in this case, that a number of HLMC associates or members cooperated with investigators. Persons were not allowed to attend the HLMC clubhouse functions unless they had some connection with a HLMC member. As the secretary of the Colorado chapter of HLMC, Mr. Schrah is well aware of the identities of members and associates. With his motion, Mr. Schrah goes fishing for the names of persons who told investigators the truth about Mr. Schrah and his associates. That is not the purpose of *Roviaro.* The motions are overly broad and unduly burdensome. Motion #252 and Motion #303 should be denied. *See McCray v. Illinois*, 366 U.S. 300, 311-12 (1967).

11. **Motion #282**.  Mr. Collins's Motion for Disclosure of Information Regarding Confidential Informant(s) (Motion #282) lacks merit, is overly broad, invites error, and should be denied.  Motion #282 asks, in part, for material which the Government intends to provide, if an informant is called as a witness.  The Government understands the requirement of *Giglio* and will provide *Giglio* impeachment information to the defense. Motion #282 also demands material which the Government does not intend to supply - for example Motion #282 ¶19 demands to be advised if the

> ". . . confidential informant has a NADDIS number, and, if so, the reasons for assigning that number including all documentation and information supporting or leading to the assignment of that number."

According to information Government counsel acquired by a Google search on the internet, the NADDIS is a confidential law enforcement database.  The Government questions the relevance of any information in such a database and seriously doubts the feasibility of identifying, as requested, "all documentation and information supporting or leading to the assignment" of a NADDIS number.  The defendant is fishing randomly.  NADDIS information is confidential.  The demand for NADDIS related information should be denied.

12. At ¶ 3 the defendant demands "the criminal record of the informant(s) and any criminal investigation in which the informant(s) was mentioned."  There is no way to identify every criminal investigation in which any person "was mentioned."  The Government intends to provide the plea agreement (if applicable), proffer letter (if applicable), and the NCIC record of any informant or co-defendant called as a witness – the Government does not normally have underlying reports relating to NCIC entries.  The defendant fails to explain how the contents of underlying reports can be used at trial under

the terms of FRE 608 and 609. Their motion is generally overly broad and unduly burdensomely At ¶ 14, the defendant demands to know "Whether the informant(s) is now or ever was undergoing psychiatric treatment." The Government respectfully submits the privacy of witnesses, even if the witnesses are informants or co-defendants, should not normally be invaded by questions pertaining to medical treatment. At ¶ 18 the defendant demands "All documents executed by the informant with the prosecution or any law enforcement agency pertaining to and (sic) all aspects of the proposed arrangement between the informant and the police and/or prosecution." The Government intends to provide the defense with the record of payments, if any, and other benefits, if any, which could be used to impeach a witness under the rationale of *Giglio*. The defendant's Motion #282 is lacking in specific legal authority, speculative in nature, overly broad and unduly burdensome. The Motion should be denied.

13. **Motion #285.** Mr. Collins's Motion for Production of all <u>Jencks</u> Materials and Memorandum Brief in Support Thereof (Motion #285) lacks merit, invites error, and should be denied. As noted by the Supreme Court, "[t]here is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). There is no requirement that "the prosecution make a complete accounting to the defense of all evidence in its possession." *United States v. Baxter*, 492 F.2d 150, 173 (9th Cir. 1973). The accused has no right to rummage through the government's files. *United States v. Williams,* 580 F.2d 578, 585 (D.C. Cir. 1978). There is no right to a pretrial review of statements subject to the Jencks Act, Title 18 U.S.C. § 3500. *See United States v. Shovea*, 580 F.2d 1382, 1389-90 (10th Cir. 1978). Motion #285 should be denied.

14. Motion #286. Mr. Collins' has filed a Motion for Production of Bruton and Rule 801(d)(2)(E) Materials and Motion for Pretrial Determination of Admissibility of Alleged Co-Conspirator/Participants Statements (Motion #286). The defendant cites *Bruton v. United States*, 391 U.S. 123 (1968) in support of his motion. To the extent the motion would address Rule 801(d)(2)(E) issues, the motion is moot and untimely. The Court addressed Rule 801(d)(2)(E) matters in the hearing on March 15, 2012, and the Government is to make its *James* proffer by May 4, 2012; objections to the *James* proffer will be made by May 18, 2012; the joint James proffer and objections will be filed with the Court by May 25, 2012 (Courtroom Minutes, #317 p.3). To the extent the defendant seeks *Bruton* statements, if the person making the post-arrest statement is not available for trial, the statement would then need to be redacted to eliminate reference to the co-defendants. If the person making the post arrest statement is available to be cross-examined at trial, *Bruton* is not applicable. At this point Motion #286 is substantially moot. The motion should be denied.

Respectfully submitted April 2, 2012.

JOHN F. WALSH
United States Attorney


By: s/*Guy Till*
GUY TILL
Assistant United States Attorney
1225 17th Street, Suite 700
Denver, CO 80202
Telephone: (303) 454-0207
Fax: (303) 454-0401
E-mail: guy.till@usdoj.gov
Attorney for Government

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of April, 2012, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENSE MOTIONS FILED BY DEFENDANTS COLLINS, LUGO AND SCHRAH (#251, #252, #282, #285, #286, #302 AND #303)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

By: s/ Lisa Vargas
LISA VARGAS
Legal Assistant
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0406
E-mail: Lisa.Vargas@usdoj.gov